**Elijah MOORE, Petitioner,**

v.

**Al C. PARKE, Respondent.**

**No. 3:96–CV–0665 AS.**

United States District Court, N.D. Indiana, South Bend Division.

June 25, 1997.

Elijah Moore, Michigan City, MI, pro se.

Charles A. Asher, Hal R. Culbertson, South Bend, IN, for petitioner.

Rafal Ofierski, Indiana Attorney General, Geoffrey Davis, Office of the Attorney General, Indianapolis, IN, for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On September 5, 1996, the petitioner, Elijah Moore ("Moore"), filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court, challenging an habitual offender determination imposed by the State of Indiana. Moore is currently incarcerated at the Indiana State Prison in Michigan City, Indiana, and is represented by counsel on his petition.

## I. FACTS AND PROCEDURAL HISTORY

On September 2, 1983, Moore was convicted on four counts of robbery and determined to be an habitual offender by a jury in the Lake County Superior Court. As a result of these convictions and the habitual offender determination, Moore was sentenced to four separate terms of twenty years in prison for each robbery conviction, each term to run concurrently. In addition, Moore's sentence was enhanced by thirty years for the habitual offender determination. The facts underlying the robbery convictions are as follows:

... on October 27, 1982, Priscilla Johnson, Ernest and Emily Knott, John Broods, Fred Marrell and Gwendolyn Robinson were playing cards in the Knotts' basement in Hammond, Indiana. Two armed black males entered the basement around 10:30 p.m. and announced a robbery. They ordered all persons to lie on the floor and took money and jewelry from them, including Mrs. Johnson's watch and Emily Knott's ring. As the robbers were preparing to leave, Hammond Police Officers Thomas and Shelton drove up to the house. Officer Thomas entered the house through an open window, illuminating the area with his flashlight. He noticed a man coming out of the kitchen carrying a sawed-off shotgun. When Thomas commanded the subject to halt, the subject raised his shotgun and Thomas fired two shots. The suspect fled to the back bedroom and was apprehended there in a bedroom closet.

The sawed-off shotgun was found under a nearby bed. Officer Thomas identified the suspect as Defendant Moore. During a strip search of Defendant Moore, Officer Frank Hughes of the Lake County Police Department confiscated a ring belonging to Mrs. Knott. The other robber, Defendant Williams, was apprehended while fleeing the scene. He was lying on the ground between two nearby houses, a black mask next to him. One of the robbers was identified by the victims as wearing a black mask and carrying a handgun. Other items discovered in Defendant Williams' flight path were gloves and a Colt pistol. When Defendant Williams was booked, a DeLock's liquor store receipt and over $600.00 were found on him.

Priscilla Johnson stated that prior to the robbery, she, Mrs. Knott, and Mrs. Robinson had gone to the Jewel store to cash Johnson's paycheck. After receiving $227.00, the women stopped at DeLock's Liquor store for Johnson to make a purchase. Johnson, owing Knott, gave Knott some wine and change from the store. Knott placed the bills and receipt in her bra.

*Moore v. State,* 485 N.E.2d 62, 64 (Ind.1985).

On direct appeal of these convictions, Moore presented several claims, all of which challenged the propriety of the robbery convictions. On November 19, 1985, the Supreme Court of Indiana affirmed the convictions and habitual offender determination. *See Moore v. State, supra.*

Several years later, on October 12, 1989, Moore filed a petition for post-conviction relief ("PCR") in the state trial court. In his PCR petition, Moore presented three separate issues. First, Moore claimed that the evidence upon which his habitual offender determination was based was insufficient. Second, Moore alleged that the state trial court erred in instructing the jury on the elements of the habitual offender determination. Third, Moore complained that he received ineffective assistance of trial and appellate counsel. After holding a hearing on the petition, the state trial court denied Moore's PCR petition. Moore subsequently appealed that decision to the Court of Ap-

peals for the State of Indiana. On June 23, 1995, the Indiana Court of Appeals affirmed the state trial court's decision.

## II. ARGUMENTS

Moore turned to federal court by filing the present petition for writ of habeas corpus in this court on September 5, 1996. In this petition, Moore raises three claims which challenge the constitutionality of his habitual offender determination. First, Moore claims that he was found to be an habitual offender without sufficient proof of the sequence in which he had committed the predicate felonies, thus, violating his due process rights under the Fourteenth Amendment to the United States Constitution. Second, Moore contends that his trial and appellate counsel were ineffective under the Sixth Amendment to the United States Constitution because counsel failed to raise the insufficiency of evidence claim. Third, Moore submits that his burden of proof on the insufficiency of the evidence in the PCR petition violates his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Thus, Moore requests that this court grant him habeas relief on his habitual offender determination.

On March 3, 1997, the State filed its answer to order to show cause, demonstrating the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). In its response, the State argues that Moore defaulted federal review of his sufficiency of the evidence claim. Specifically, the State contends that the state court's denial of his PCR petition was based upon an adequate and independent state ground-that Moore failed to satisfy his burden of proof on the sufficiency of evidence claim pursuant to *Weatherford v. State*, 619 N.E.2d 915, 916–17 (Ind.1993). Further, the State submits that the petitioner cannot show cause and prejudice for his procedural default. Therefore, the State argues that the merits of Moore's insufficiency of the evidence claim should not be addressed. On the petitioner's ineffective assistance claim, the State asserts that Moore cannot establish the requisite prejudice from the allegedly deficient performance of his counsel since his habitual offender determi-

nation was neither unfair nor suspect. As a result, the State requests that this court deny the petitioner's request for habeas relief.

On May 1, 1997, the petitioner filed a reply to the State's answer to order to show cause. In his reply, Moore argues that the State's procedural default defense is unavailing since the *Weatherford* decision was not a firmly established and regularly followed rule when the Indiana Court of Appeals affirmed the denial of his PCR petition. In addition, Moore submits that he can establish the necessary cause for his procedural default and the prejudice resulting therefrom. As a result, the petitioner reiterates his request that this court vacate his habitual offender determination.

On April 10, 1997, this court heard oral argument on this petition in South Bend, Indiana. Subsequently, on April 29, 1997, this court ordered the respondent to produce the state court record, which this court has reviewed pursuant to the mandates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Additionally, this court ordered the parties to brief the applicability of the decision of the United States Court of Appeals for the Seventh Circuit in *Williams v. Duckworth*, 738 F.2d 828 (7th Cir.1984), *cert. denied*, 469 U.S. 1229, 105 S.Ct. 1229, 84 L.Ed.2d 367 (1985). On May 16, 1997, the petitioner filed his brief regarding *Williams*, while the respondent filed its brief on May 19, 1997. With these preliminaries aside, the court will now address the merits of the claims presented by the petitioner and the defenses raised by the State.

## III. STANDARDS OF REVIEW

A claim under 28 U.S.C. § 2254 requires the federal habeas court to ensure that the state criminal conviction was not achieved at the expense of the petitioner's constitutional rights. Justice Stewart, speaking for the Supreme Court of the United States in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), described the role of the federal district courts in habeas proceedings:

A judgment by a state appellate court rejecting a challenge to evidentiary suffi-

ciency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur-reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right-is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791 (citation omitted).

The Congress of the United States has recently codified the holdings of *Jackson* and its progeny through the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), which amended 28 U.S.C. § 2254, in relevant part, as follows:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

When Congress passed the AEDPA, the standards of review that the court must apply to the merits of a petition for writ of habeas corpus under § 2254 also changed significantly. Section 2254 was further amended in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d).

Just this week, the Supreme Court of the United States held that the provisions of the AEDPA are not to be applied to cases pending on the date of enactment. *Lindh v. Murphy,* — U.S. —, —, 117 S.Ct. 2059, 2064–72, 138 L.Ed.2d 481 (1997). Because the petition in this case was filed on or about September 5, 1996—months after the AEDPA was enacted, this court must apply the provisions of the AEDPA that are applicable to this case.

### IV. PROCEDURAL DEFAULT

■ Before this court may address the merits of the claims presented in Moore's petition, it is necessary to make two inquiries: (1) whether the petitioner has adequately presented his claims during the course of state proceedings, and (2) whether the petitioner has exhausted all of his available state court remedies. *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). If the answer to either of these questions is "no," then the claims are barred either for failure to exhaust available state court remedies or under the doctrine of procedural default. Since the respondent has affirmatively raised the issue of procedural default in this case, and since it appears that all claims have been exhausted, the court will address the issue of procedural default.

■ To avoid a finding of procedural default, a habeas petitioner must have presented his state claims in such a way as to fairly alert the state court to the specific constitutional grounds asserted in the habeas petition. *Pierson v. O'Leary,* 959 F.2d 1385,

1392 (7th Cir.), *cert. denied,* 506 U.S. 857, 113 S.Ct. 168, 121 L.Ed.2d 115 (1992). The fundamental requirement that a petitioner first present his claims to the state court is rooted in the belief that it would be unjust for a federal court to upset a state court conviction without providing the state courts with an opportunity to correct the constitutional violation. *United States ex rel Spurlark v. Wolff,* 699 F.2d 354, 356 (7th Cir.1983).

▮ The State argues that the petitioner has procedurally defaulted his sufficiency of the evidence claim because that claim was rejected by the state courts by applying a state procedural rule the decision of the Supreme Court of Indiana in *Weatherford, supra*—that is independent of the federal question and adequate to support the state judgment. Thus, this court must determine whether the state court's reliance on *Weatherford* qualifies as an adequate and independent state ground to warrant a finding of procedural default.[1]

As a general rule, federal district courts may not reach the merits of a habeas petition challenging a state conviction if the "state court declined to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement." *Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991). When the state court declines to review an issue because the issue was improperly preserved, the state court decision rests upon a state law ground that is both "independent of the federal question and adequate to support the judgment." *Id.* at 730, 111 S.Ct. at 2554. "Whether the ground is independent depends on state law, *see Hogan v. McBride,* 74 F.3d 144 (7th Cir.1996); whether it is adequate depends on federal law." *Liegakos v. Cooke,* 106 F.3d 1381, 1385 (7th Cir.1997).

In this case, the petitioner does not contest the independence of the state law from the federal question. Rather, Moore denies that the state court's reliance on *Weatherford is*

adequate to support the judgment. In *NAACP v. Alabama ex. rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court of the United States held that a rule of procedure is not adequate to prevent federal collateral review if the petitioner could not have been "deemed to have been apprised of its existence" at the time he omitted the procedural step in question. 357 U.S. at 457, 78 S.Ct. at 1169. The petitioner contends that at the time of his direct appeal, no rule required him to prove his own innocence in order to establish that the evidence supporting his habitual offender determination was insufficient. Rather, the petitioner argues that prior to *Weatherford,* post-conviction courts reviewed such claims under the same standards as are applied on direct appeal. *See Smith v. State,* 559 N.E.2d 338, 345 (Ind.Ct.App.1990).

In *James v. Kentucky,* 466 U.S. 341, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984), the Supreme Court of the United States held that only "firmly established and regularly followed" state procedural rules prevent federal review under the doctrine of procedural default. 466 U.S. at 348–51, 104 S.Ct. at 1835–37. What this means is that the state procedural rule must have been in place, and enforced, "by the time in which it is to be applied." *Liegakos,* 106 F.3d at 1385 (citing *Ford v. Georgia,* 498 U.S. 411, 424, 111 S.Ct. 850, 857–58, 112 L.Ed.2d 935 (1991)). Thus, this court must determine when the procedural rule that was the basis for the state court's decision-the Indiana Supreme Court's decision in *Weatherford*—was created in order to determine whether the rule was "firmly established and regularly followed" at the time of Moore's PCR petition.

The petitioner submits that he committed the act or omission leading to his default when he failed to raise the sufficiency of the evidence claim on direct appeal in 1985. However, the State counters by arguing that the default occurred when the petitioner

---

1. In *Weatherford,* decided in 1993, the Supreme Court of Indiana held that a petitioner who raises a sufficiency of the evidence claim on a habitual offender determination for the first time in a petition for post-conviction relief has the burden of demonstrating that he was not an habitual offender under the laws of the State of Indiana.

*Weatherford,* 619 N.E.2d at 917–18. The Supreme Court found that since the petitioner was before the Court on a PCR petition and not his direct appeal, it would be inequitable to allow the petitioner to prevail simply by putting the State to its proof as though the case were being tried or appealed in the first instance. *Id.*

failed to meet his heightened evidentiary burden under *Weatherford* on post-conviction review. The *Weatherford* decision came down from the Supreme Court of Indiana on August 31, 1993. The petitioner in this case filed his PCR petition on October 12, 1989, and Judge James Letsinger of the Lake County Superior Court denied his petition under *Weatherford* on October 3, 1994.

In his reply, the petitioner relies on the Seventh Circuit's holding in *Liegakos,* where the court held that a new procedural rule in 1994 was not adequate to bar review of the petitioner's claim because at the time of the petitioner's direct appeal, the rule in effect did not require him to provide any explanation for failing to raise the issue on direct appeal. *Liegakos,* 106 F.3d at 1385. In this case, the rule that the state court utilized to bar the petitioner's claims on post-conviction review was not in effect at the time of the petitioner's direct appeal. However, unlike the circumstances in *Liegakos,* the *Weatherford* rule does not require the petitioner to perform any affirmative act or omission other than to fail to raise a claim on direct appeal. The *Weatherford* rule merely changed the standard of review the state court applied in ruling on the petitioner's claim that had not been raised during the direct review of his habitual offender determination. The *Weatherford* decision did not apply to the petitioner's claim until he presented the claim in his PCR petition *and* the state trial court rendered its decision denying the PCR petition. As a result, the time to apply the *Weatherford* rule did not arise until the state trial court decided Moore's PCR petition—over a year after *Weatherford* was decided. In addition, the *Weatherford* decision had been applied by the courts of the State of Indiana several times prior to Judge Letsinger's decision denying Moore's PCR petition. *See, e.g., Lingler v. State,* 640 N.E.2d 392 (Ind.Ct.App.1994); *Lingler v. State,* 635 N.E.2d 1102 (Ind.Ct.App.1994). Thus, in this court's view, even though the petitioner's failure to raise the sufficiency of the evidence claim on direct review is a pre-

requisite to applying the state procedural rule, *Weatherford* was not applied by the state courts until Moore presented his sufficiency of the evidence claim on post-conviction review in the Lake County Superior Court.

Therefore, it is this court's view that since the *Weatherford* decision was in existence for nearly a year prior to the "default" in this case—the petitioner's failure to meet the heightened evidentiary standard, the state court's decision to base the denial of Moore's claim on that state procedural rule is an adequate and independent state ground for denying that claim. As a result, the petitioner's sufficiency of the evidence claim was procedurally defaulted on post-conviction review in the state courts of Indiana.[2]

■ Once a claim is procedurally defaulted, a federal court will not address the merits of that claim unless the petitioner can show both cause for the default and prejudice resulting from the failure to obtain review on the merits. *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977); *Lostutter,* 50 F.3d at 394. It appears that the petitioner asserts the ineffectiveness of his trial and appellate counsel as the cause for his procedural default. Arguably, Moore's claim of ineffective assistance of counsel could be deemed an attempt at establishing cause. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). However, a federal court may not consider ineffective assistance of counsel as cause for a procedural default unless the ineffectiveness claim was itself presented to the state courts as an independent claim. *Id* at 489, 106 S.Ct. at 2646; *Lostutter,* 50 F.3d at 395. According to the record, it appears that the petitioner has properly presented his ineffective assistance claim to the state courts of Indiana. Thus, it is proper for this court to consider whether counsel's ineffective assistance is cause to excuse Moore's procedural default in this case.

---

**2.** The petitioner also challenged the constitutionality of the *Weatherford* decision under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. However,

it does not appear that such a claim was presented to the courts of the State of Indiana. Therefore, the court finds that said claim is also subject to procedural default.

■ The default in this case is based upon the petitioner's failure to raise his sufficiency of the evidence on his direct appeal and, subsequently, his failure to prove his sufficiency of the evidence claim by a preponderance of the evidence. The petitioner asserts the ineffectiveness of his appellate counsel as cause for the default. Specifically, he contends that his appellate counsel was constitutionally ineffective because he failed to present the sufficiency of the evidence claim on the habitual offender determination in his direct appeal.

■ As set forth above, the Supreme Court of the United States has held that ineffective assistance of counsel may be considered cause for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). Before a state inmate can use ineffective assistance of counsel as cause for a procedural default, he must first present the claim as an independent ground to the state courts either on direct appeal or in post-conviction proceedings. *Lemons v. O'Sullivan*, 54 F.3d 357, 360 (7th Cir.1995). To support a claim that ineffective assistance of counsel was the cause of the procedural default at issue, the petitioner must establish that his counsel's assistance was deficient and that performance thereby prejudiced his direct appeal. *See McCleese v. United States*, 75 F.3d 1174, 1179–80 (7th Cir.1996).

The State does not challenge the petitioner's arguments for cause. Rather, the State argues that assuming Moore's counsel was responsible for the petitioner's failure to obtain state review of his sufficiency of the evidence claim on the merits, Moore still is not entitled to a review on the merits of his defaulted claim because he cannot show prejudice. Therefore, the court will address whether the petitioner has shown the requisite prejudice to set aside his procedural default.

Assuming without deciding that the ineffectiveness of petitioner's appellate counsel was the cause of his procedural default, the petitioner must still demonstrate that he was prejudiced by his attorney's failure to raise the sufficiency of the evidence claim on direct appeal.[3] In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court of the United States advised that a court need not conduct the full two-pronged test to determine whether counsel was ineffective. 466 U.S. at 697, 104 S.Ct. at 2069–70. Instead, the court may begin with the second step which assumes, arguendo, that the petitioner has satisfied the first element but then inquires whether that failure caused the petitioner to be wrongfully convicted. *Id.; Stone v. Farley*, 86 F.3d 712, 716 (7th Cir.1996). Thus, this court must determine whether "counsel's performance prejudiced the defendant such that it rendered the proceedings unfair or the results unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 368, 113 S.Ct. 838, 841–42, 122 L.Ed.2d 180 (1993). The petitioner must, ultimately, demonstrate that the alleged constitutional violation did not merely affect the outcome of the state proceeding, but rendered the proceeding "unfair" or "suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986).

The petitioner submits that the error by Moore's appellate counsel clearly deprived him of a constitutional right-namely, the right not to be punished unless the State proves all elements of the offense beyond a reasonable doubt. The petitioner asserts that the deprivation of this right rendered his direct appeal unfair or suspect because the sufficiency of the evidence claim that was omitted by counsel goes directly to the relia-

---

3. In *Fern v. Gramley*, 99 F.3d 255 (7th Cir.1996), the United States Court of Appeals for the Seventh Circuit discussed whether the prejudice needed to excuse a procedural default is identical to the prejudice needed to establish ineffective assistance of counsel. 99 F.3d at 259 n. 4. However, the Seventh Circuit refused to address the question since the parties had not briefed the issue. *Id.* In this case, the court must determine whether Moore was prejudiced under *Strickland* in order to determine whether counsel's performance was ineffective and, thus, to decide whether the petitioner has alleged the requisite cause and prejudice to excuse his default. Thus, this court will use the prejudice standards of *Strickland* and its progeny to address whether prejudice exists in this case either under *Strickland* (for ineffective assistance of counsel) or *Wainwright* (for procedural default).

bility of the trial process. The petitioner adds that "there can be no greater threat to the reliability of the trial process than when the State is allowed to convict a person without producing sufficient evidence of guilt." *See* Petitioner's Memorandum in Support of Reply to State's Answer to Order to Show Cause at 7. Thus, the petitioner submits that his counsel's failure to raise the sufficiency of the evidence claim was prejudicial to the appellate review of his habitual offender determination.

The State counters by arguing that "'[t]o set aside a conviction or sentence solely because the outcome would have been different ... may grant the defendant a windfall to which the law does not entitle him.'" *See* Respondent's Memorandum in Support of Answer to Order to Show Cause at 5 (quoting *Holman v. Page*, 95 F.3d 481, 491 (7th Cir.1996)).[4] Thus, the State contends that granting Moore's habeas request would provide him with a "windfall" since his post-conviction counsel conceded that he was an habitual offender under Indiana law.

■ When claims of ineffective assistance of counsel are based on the failure to raise viable issues on appeal, the court must examine the state court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. *See Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996). Significant issues that could have been raised should then be compared to those issues actually raised on appeal; "generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* Put another way, the Seventh Circuit has held that when appellate counsel omits a claim that is a "dead-bang

winner," ineffective assistance should result. *Bond v. United States*, 1 F.3d 631, 635 (7th Cir.1993).

■ After reviewing the state court record in this case, the court is unpersuaded that the sufficiency of the evidence claim omitted by Moore's appellate counsel rises to the level of a "dead-bang winner." According to the record, the petitioner's appellate counsel did present several grounds for review on direct appeal. *See Moore v. State*, 485 N.E.2d 62 (Ind.1985). In addition, after reviewing the record of the habitual offender trial, it is this court's view that the sequencing of convictions appears to be within the requirements of the habitual offender statute. *See* Ind.Code § 35–50–2–8(d). Although this court finds the issue of prejudice to be a very close call in this case, the court is not convinced that the petitioner's direct appeal was rendered unfair or suspect by his appellate counsel's omission of the sufficiency of the evidence claim. Therefore, the court finds that the petitioner cannot establish the requisite prejudice to excuse his procedural defaults in this case.[5]

■ Because Moore is unable to establish "cause and prejudice" sufficient to excuse his failure to properly present the sufficiency of the evidence claim to the state courts, Moore may only obtain review of that procedurally defaulted claim if he falls within the "narrow class of cases implicating a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 314, 115 S.Ct. 851, 861, 130 L.Ed.2d 808 (1995). A petitioner must allege more than actual innocence to establish a fundamental miscarriage of justice—he must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*, 513 U.S. at 327, 115

---

4. The court must note that the State's return to order to show cause did not contain page numbers, as required by Local Rule 5.1(a) of the LOCAL RULES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA The Attorney General of the State of Indiana is cautioned to follow the Local Rules of the Northern District of Indiana when filing briefs with this court in the future.

5. Because the petitioner is unable to establish the requisite prejudice, this court need not address the issue of cause. *See Smith v. Murray*, 477

U.S. 527, 533, 106 S.Ct. 2661, 2665–66, 91 L.Ed.2d 434 (1986). Additionally, in his petition, Moore presents a separate claim of ineffective assistance of counsel under the Sixth Amendment. However, for the same reasons set forth above, the court finds that the petitioner cannot establish the requisite prejudice under *Strickland* and *Fretwell* to warrant a finding that the Sixth Amendment was violated in the direct review of his convictions and habitual offender determination. Therefore, the court hereby now dismisses that claim.

S.Ct. at 867; *Whitlock v. Godinez*, 51 F.3d 59, 63 (7th Cir.1995).

Again, a careful review of the record in this case clearly shows that Moore has failed to sufficiently establish that a finding of procedural default on these claims will result in a fundamental miscarriage of justice in this case.[6] Accordingly, the court finds that the Moore's sufficiency of the evidence claim on his habitual offender determination and the due process claim challenging the constitutionality of *Weatherford* are procedurally defaulted and the court is foreclosed from deciding the merits of said claims. Therefore, such claims are now dismissed.

### V. CONCLUSION

The court must note that the questions presented in this petition raise many very close calls. In addition, the court commends the fine efforts of counsel in briefing the issues here presented. However, for the foregoing reasons, the court now holds that Moore's due process and sufficiency of the evidence claims are subject to the doctrine of procedural default, and accordingly, such claims are now dismissed. Moreover, the court finds that the petitioner's ineffective assistance of counsel claim under the Sixth Amendment to the United States Constitution also to be without merit. Accordingly, the court now **DENIES** Moore's habeas corpus petition, and the clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

---

6. The petitioner does not present separate arguments for cause and prejudice with relation to the due process claim which alleges that the *Weatherford* decision is unconstitutional. Accordingly, since the petitioner has not alleged his actual innocence, the court finds that the due process claim is procedurally defaulted and must be dismissed.