**George E. BANKS, Petitioner,**

v.

**Martin HORN, Commissioner, Pennsylvania Department of Corrections; James Price, Superintendent of the State Correctional Institution at Greene; Raymond Colleran, Superintendent of the State Correctional Institution at Waymart; and the Commonwealth of Pennsylvania, Respondents.**

No. 4:CV–99–0438.

United States District Court, M.D. Pennsylvania.

May 7, 1999.

Al Flora, Jr., Wilkes–Barre, PA, William Ruzzo, Kingston, PA, for petitioner.

Peter Paul Olszewski, Jr., District Attorney's Office, Wilkes–Barre, PA, for respondents.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On March 22, 1999, petitioner George E. Banks, an inmate at the State Correctional Institution at Waymart, Wayne County, Pennsylvania, commenced this action with the filing of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. According to the petition, Banks was convicted in 1983 of twelve counts of first-degree murder, one count of third-degree murder, one count of attempted murder, and one count of robbery. Twelve consecutive sentences of death, plus a consecutive sentence of 25 to 50 years total incarceration, were imposed by the Court of Common Pleas of Luzerne County, Pennsylvania.

Banks has been granted leave to proceed *in forma pauperis,* counsel has been appointed, and a stay of a previously scheduled execution has issued.

On March 31, 1999, on initial review under Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. following § 2254, we issued a rule to show cause why four of Banks' claims should not be dismissed as procedurally barred. Before the court is Banks' response to the rule to show cause.

The facts underlying Banks' conviction having been recited in a number of the published opinions related to this case, we will not repeat them here. Because the legal questions before us are narrow, any repetition of the facts is unnecessary. Specific reference is made to the thorough recitation provided by the Supreme Court of Pennsylvania in its first opinion. *See Commonwealth v. Banks,* 513 Pa. 318, 324–335, 521 A.2d 1, 3–9 (1987).

### DISCUSSION:

#### I. CLAIMS AT ISSUE

The grounds asserted by Banks which we indicated appear to be procedurally barred (numbered as in our prior order) are:

(7) The trial court, in the sentencing hearing, failed to instruct the jury on life imprisonment without parole in violation of the defendant's rights to protection from cruel and unusual punishment and due process of law under the Eighth and Fourteenth Amendments.

(9) The trial court's failure to instruct the jury that it could render a verdict of life imprisonment based on a finding of mercy engendered from the evidence violated the defendant's Eighth Amendment right to protection from cruel and unusual punishment.

(11) The trial court's failure to voir dire prospective jurors on whether they would automatically impose a sentence of death upon a finding of first degree murder deprived the defendant of a jury which would consider mitigating evidence in a capital sentencing hearing in violation of the Eighth Amendment.

(12) The trial court improperly applied a clear and convincing standard for the burden of proof rather than a preponderance of the evidence standard in determining whether the defendant met his burden of proof as to competency to stand trial and to waive his Fifth and Sixth Amendment rights.

### II. PROCEDURAL DEFAULT

In *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court of the United States discussed the concept of procedural default, which implicates the independent and adequate state ground doctrine. A federal court will not review a question of federal law which has been procedurally defaulted in state court if the decision of the state court is independent of the federal question and adequate to support the judgment. *Id.* at 727–729, 111 S.Ct. 2546. However, there must be a clear and express statement by the state court that its decision is based upon state law. *Id.* at 731–735, 111 S.Ct. 2546.

Once it is determined that a federal claim has been procedurally defaulted, a federal court to which a petition for a writ of habeas corpus is presented will consider the claim only if the petitioner can demonstrate cause for the default and prejudice as a result of the violation of federal law (the cause and prejudice standard), or that failure to consider the claim will result in a fundamental miscarriage of justice. *Id.* at 750, 111 S.Ct. 2546. *See generally Carpenter v. Vaughn,* 888 F.Supp. 635, 644–646 (M.D.Pa.1994) (summarizing *Coleman* ).

The case was before this court previously, and we denied a motion to dismiss the petition as a "mixed petition" under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), and *Toulson v. Beyer,* 987 F.2d 984 (3d Cir.1993). *See Banks v. Horn,* 928 F.Supp. 512 (M.D.Pa.1996). The Third Circuit reversed, holding that review of the claims was not clearly foreclosed under state law and therefore not procedurally barred in federal court. *Banks v. Horn,* 126 F.3d 206 (3d Cir.1997). Since then, the Supreme Court of Pennsylvania has held that four of the issues recited in the instant petition, which include the three claims which we held were procedurally barred, are time-barred under Pennsylvania law. *Commonwealth v. Banks,* 726 A.2d 374, 1999 WL 104576 (Pa. Mar.2, 1999) (citing 42 Pa.Cons.Stat.Ann. § 9545(b), which sets forth a one-year limitation period on petitions under the Post Conviction Relief Act). It was this ruling which formed the basis for our determination that the four claims recited above probably are barred as having been procedurally defaulted, and for our issuance of the rule to show cause.

We turn, then, to the reasons recited by Banks for finding that the claims have not been procedurally defaulted or that the default should be excused.

### III. ADEQUACY OF STATE GROUNDS

Banks first argues that the state rule applied by the Supreme Court of Pennsylvania does not furnish an adequate basis for denying relief. The crux of this argument lies in amendments to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.Cons.Stat.Ann. §§ 9541 et seq. The amendments, enacted in 1995 and effective January 16, 1996, included the one-year time limitation on the filing of a petition under the PCRA, § 9545(b), which is jurisdictional in nature. *Banks,* 726 A.2d 374, 376.

Banks argues that the state procedural rule is not "adequate" because, at the time he filed his second PCRA petition, he could no longer pursue an avenue of relief which was available to him prior to the amendment. He relies on *Ford v. Georgia,* 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991), for this proposition.

In *Ford,* the defendant filed a pre-trial motion in state court to preclude the prosecution from exercising its peremptory strikes in a racially discriminatory manner, and defense counsel argued the motion at a pretrial hearing. *Id.* at 414–415, 111 S.Ct. 850. The motion was denied. *Id.* at 415, 111 S.Ct. 850. On the second day of trial, the trial judge held a conference in chambers and placed on the record the manner in which the prosecution used its peremptory strikes. *Id.* at 416, 111 S.Ct. 850.

At that time, the applicable opinion of the Supreme Court of the United States was *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). After the defendant's conviction and sentence were affirmed by the Supreme Court of Georgia, he petitioned for *certiorari* with the Supreme Court of the United States. While that petition was pending, the Supreme Court issued its opinion in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), altering the burden of proof for such a claim. While not generally retroactive, *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), the rule of *Batson* was held to apply to all

cases pending on direct review or not final when *Batson* was issued. *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). The Supreme Court of the United States granted the petition for certiorari in *Ford* and remanded the case for further consideration. *Ford* at 417, 111 S.Ct. 850.

On remand, the Supreme Court of Georgia held that the claim was procedurally barred based on its intervening decision in *State v. Sparks,* 257 Ga. 97, 355 S.E.2d 658 (1987), that a *Batson* claim had to be raised prior to the time the jurors selected for trial were sworn. *Ford* at 417–418, 111 S.Ct. 850.[1] Since the defendant had not made an objection between jury selection and trial, according to the Supreme Court of Georgia, the *Swain/Batson* claim was barred by the state procedural rule.

The Supreme Court of the United States reversed, holding that, because the applicable state procedural rule was not clearly established at the applicable time, the rule was not adequate to support the judgment.

The application of the opinion in *Ford* is a bit confusing, mostly due to the different procedural posture. When the Supreme Court reviews a state court decision pursuant to a writ of *certiorari, see* 28 U.S.C. § 1257, it is reviewing the judgment of the state court. If resolution of a federal question does not affect the judgment, "there is nothing for the Court to do," *Coleman* at 730, 111 S.Ct. 2546, and the Supreme Court lacks jurisdiction. Review of the independence and adequacy of the asserted state procedural bar is therefore a necessary part of the Supreme Court's review of the judgment.

In contrast, a federal court on habeas review is determining the lawfulness of the petitioner's custody "simpliciter," and not the judgment itself. *Id.* Still, because custody is pursuant to a state judgment, the independent and adequate state ground doctrine applies for reasons of comity and

federalism, as opposed to jurisdiction. *Id.* at 730–731, 111 S.Ct. 2546. Thus, in *Ford,* the Supreme court exercised its jurisdiction by remanding for consideration of the constitutional issue by the state courts because the asserted state procedural bar was not adequate. 498 U.S. at 425, 111 S.Ct. 850. *See also James v. Kentucky,* 466 U.S. 341, 351–352, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984) (remanding to state court for harmless error analysis when state procedural bar inadequate). In contrast, in the habeas context, the fact that the state courts did not base a decision on an independent and adequate state ground permits the federal court to consider the merits of the constitutional issue. *Coleman* at 735, 111 S.Ct. 2546. Regardless, the independent and adequate state ground doctrine applies with equal force in both contexts, as it is the basis for its application, and not the manner of its application, that differs.

In *Ford,* the Supreme Court emphasized that the timeliness of the exercise of local power is essential in determining the sufficiency of a procedural bar. 498 U.S. at 423, 111 S.Ct. 850. The state rule must be "firmly established and regularly followed" at the time of trial, or such other appropriate time for action, to prevent review of a constitutional claim. *Id.* at 423–424, 111 S.Ct. 850 (quoting and citing *James* at 348–351, 104 S.Ct. 1830). In *Ford,* the *Sparks* rule did not exist at the time of the defendant's trial, so that he could not have known that an objection to the prosecution's use of peremptory strikes had to be raised between jury selection and the oath. Since the defendant could not have known to raise his constitutional claim at the appropriate time, a judgment that he failed to do so was inadequate to bar presentation of the claim. *Id.* at 424, 111 S.Ct. 850. The same principle applied in *James,* in which the Supreme Court noted that Kentucky's distinction between "instruction"

1. The Supreme Court of Georgia also suggested that no *Batson* claim had been raised at trial, a holding rejected by the Supreme Court

of the United States for reasons not relevant here.

and "admonition" was not applied in a consistent manner at the time of the defendant's trial, i.e. the time at which he would have to raise the constitutional claim at issue. The claim there related to the defendant's entitlement to an instruction to the jury on the proscription on drawing an adverse inference from the failure of the defendant to testify. *Id.* at 350–351, 104 S.Ct. 1830.

■ The Third Circuit has held that a state rule may provide an independent and adequate ground only if: "(1) the state procedural rule speaks in unmistakable terms; (2) all appellate courts refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance is consistent with other decisions." *Doctor v. Walters,* 96 F.3d 675, 683–684 (3d Cir.1996), *reh'g and reh'g in banc denied.* In this instance, the rule is statutory and clear, i.e. "speaks in unmistakable terms." The only appellate court which may review the claims, the Supreme Court of Pennsylvania, refused. There are no other opinions with which to compare the Supreme Court's decision because of recency of the amendment of § 9545(b), but the decision is consistent with the Pennsylvania courts' interpretation of the plain language of a statute.

Banks' argument that "retroactive" application of the amended version of § 9545(b) renders it inadequate under the independent and adequate state ground doctrine misconstrues the timeliness consideration at issue. The times at which Banks could have raised the constitutional claims under consideration passed long before the amendment of § 9545(b). Those

times were: for claims (7) and (9)—charge to the jury during the penalty phase; for claim (11)—jury selection; and for claim (12)—the competency hearing or at trial. The claims also could have been raised in post-trial motions, on direct appeal, or at any stage of the proceedings on Banks' first petition for post-trial relief, or in a second petition filed before the amendment of § 9545(b). Even after the amendment, Banks had 60 days before the amendment became effective in which to file a second PCRA petition.

In other words, the time applicable for purposes of the state procedural bar at issue is the date on which a second PCRA petition is filed. That time was prospective in the sense that it would apply only to petitions filed after the effective date, not to petitions filed before the effective date. Therefore, it was not a state procedural bar's retroactive application which prevented Banks from pursuing the four claims at issue. Rather, it was Banks' failure to raise the claims in the approximately 13 years that they were available for raising that prevented him from pursuing them. That period included the 60 days in which it was clear (due to the passage of the amendments to the PCRA) that the time for filing a petition would not be unlimited.[2]

We conclude that the one-year limitation period of § 9545(b) constitutes an adequate state ground.

## IV. INDEPENDENCE OF STATE GROUNDS

Banks next contends that the procedural bar is not "independent" for purposes of

---

**2.** Distinguishable on this basis is *Moore v. Parke,* 148 F.3d 705, 708–710 (7th Cir.1998), in which the Seventh Circuit held that when a state rule changed the standard for collateral review based on the failure to present a claim on direct review, the time of the default is the filing of the direct appeal. Since the petitioner could not have known of the rule at that time, the rule was not an adequate state ground. The distinction lies in the fact that there was no time permitted to cure the default, as in this case.

Consistent with our holding is *Cabrera v. Barbo,* 175 F.3d 307 (3d Cir.1999), received by this court after the draft of this memorandum was prepared. The Third Circuit reiterated the principles we have outlined above, slip op. at 10–11, and held that the state procedural bar was adequate because the petitioner had been given an opportunity to present the disputed claim in a post-conviction proceeding in which any unresolved issue was open for consideration. *Id.* at 310.

procedural default. According to Banks, the Supreme Court of Pennsylvania has a statutory duty to consider constitutional claims, so that affirming the conviction and sentence on direct appeal is an implicit rejection of Banks' constitutional claims.

This argument has its genesis in *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Before addressing the constitutional issue involved, the Supreme Court of the United States addressed the preliminary question of whether a state procedural bar deprived it of jurisdiction:

> The Oklahoma waiver rule does not apply to fundamental trial error.... Under Oklahoma law, and as the State conceded at oral argument, federal constitutional errors are "fundamental." ... Thus, the State has made application of the procedural bar depend on an antecedent ruling on federal law, that is, on the determination of whether federal constitutional error has been committed. Before applying the waiver doctrine to a constitutional question, the state court must rule, either explicitly or implicitly, on the merits of the constitutional question.

*Id.* at 74–75, 105 S.Ct. 1087 (citations omitted).

The Ninth Circuit has expanded on the holding of *Ake.* In *Beam v. Paskett,* 3 F.3d 1301 (9th Cir.1993), *cert. denied sub nom. Arave v. Beam,* 511 U.S. 1060, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994), it considered a mandatory review statute from Idaho in which the record was to be reviewed by the Idaho Supreme Court to determine whether a death sentence was the product of "passion, prejudice, or any other arbitrary factor." *Id.* at 1306 (citing Idaho Code § 19–2827). The court noted that the State of Montana had mandatory review provisions identical to those of Idaho in all relevant respects. *Id.* The Montana Supreme Court had reviewed the provisions and held that any claim covered by the mandatory review provisions was to be deemed resolved against a defendant if the trial court was affirmed, regardless of whether the claim was raised or whether the claim was addressed in the Supreme Court's opinion. *Id.* Thus, if the claim was raised on collateral review, the reviewing court could rely on the affirmance and not review the claim further. *Id.* The Ninth Circuit opined that the Idaho Supreme Court would treat its mandatory review provision in an identical manner. *Id.* at 1306–1307. In light of *Ake,* then, review of constitutional questions is implicit in the state's direct review, and "application of the procedural bar depends upon an antecedent determination of federal law and does not constitute an independent and adequate state ground." *Id.* at 1307.

The Pennsylvania statute governing mandatory review by the state Supreme Court also contains language to the effect that the court must determine whether the death sentence was "the product of passion, prejudice or any other arbitrary factor ..." 42 Pa.Cons.Stat.Ann. § 9711(h)(3)(i). However, the Supreme Court of Pennsylvania has never held that, if it affirms a conviction and sentence under this provision, all constitutional claims should be deemed to have been resolved against the defendant. Rather, its mandatory review generally seems to be for a sufficiency of the evidence. *Commonwealth v. Thomas,* 552 Pa. 621, 717 A.2d 468, 473 (1998), *reargument denied.*

More importantly, grounds for relief under the PCRA include federal constitutional claims. *See* 42 Pa.Cons.Stat.Ann. § 9543(a)(2)(i) (same both before and after amendment). A reading that all constitutional claims are deemed presented on direct appeal would obviate the need to present such claims on collateral review, a reading at odds with the express language of the PCRA. *See generally Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 707 (1998) (reviewing, in context of appeal from denial of PCRA petition, claim that due process required state to provide funds for assistance of scientific expert in the PCRA proceedings), *reargument denied.* Moreover, in at least one instance,

the Supreme Court of Pennsylvania has rejected the notion that it is responsible for detecting all errors of constitutional magnitude on direct appeal:

> As we are reversing the sentence of death, we decline to review the ineffectiveness claims regarding counsel's actions in the penalty phase. In addition, we decline counsel's invitation to scour the record for additional errors caused by counsel and *sua sponte* raise said issues; the request is inappropriate and nonsensical in that such advocacy would be beyond the scope of our appellate review.

*Commonwealth v. Paolello*, 542 Pa. 47, 76 n. 12, 665 A.2d 439, 454 n. 12 (1995).

■ We conclude that the Supreme Court of Pennsylvania would not hold that its statutorily mandated review in capital cases would mean that any unresolved constitutional questions are deemed resolved against the defendant in collateral proceedings under the PCRA. Assuming that the Third Circuit would follow the holding of the Ninth Circuit in *Beam* under similar circumstances, *cf. Bennett v. Angelone*, 92 F.3d 1336, 1345 (4th Cir.) (not deciding whether Fourth Circuit would follow *Beam* because claims were denied on merits in district court), *cert. denied*, 519 U.S. 1002, 117 S.Ct. 503, 136 L.Ed.2d 395 (1996), we conclude that the underlying principle does not transfer to the Pennsylvania mandatory review statute. Therefore, a federal constitutional issue cannot be deemed to have been fairly presented to the Supreme Court of Pennsylvania merely because the Supreme Court has conducted direct review in a capital case, and the procedural bar is an independent state ground.

## V. RETROACTIVE APPLICATION OF RECOGNIZED RIGHTS

■ Banks contends that the decision of the Supreme Court of Pennsylvania does not clearly and unambiguously rest on state law grounds because the Supreme Court determined that none of the exceptions to the one-year limit under § 9545(b)

applies. Among the exceptions is the following:

> ... the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.Cons.Stat.Ann. § 9545(b)(1)(iii). The Supreme Court stated in its most recent opinion in this case, "Finally, Appellant fails to refer to any constitutional rights recognized after his conviction became final and which were held to have retroactive application." *Banks*, 726 A.2d 374 at 376.

According to Banks, this statement implicates retroactivity analysis under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Actually, no constitutional analysis is implicated whatsoever. The right at issue must have been recognized previously before the exception applies. The time of the holding that the right is retroactive also is prior to the filing of the petition to which the holding is said to apply. That this is so is supported by the language of the statute: the right was recognized and "has been held" (not is held) to be retroactive. Also, the court which recognized the right must make the retroactivity holding, since the exception states, "has been held by *that court*". Of course, it is also true that a PCRA petition is filed in the trial court, not the Supreme Court of the United States or the Supreme Court of Pennsylvania, the courts which must recognize the right and determine its retroactivity, so that it is only common sense that the PCRA court does not engage in any retroactivity analysis.

Moreover, the Supreme Court of Pennsylvania conducted no retroactivity analysis, either overt or implicit, in determining that Banks pointed to no newly recognized, retroactive right. It merely stated that Banks did not refer to any such right. No retroactivity analysis is interwoven, as

Banks puts it, in such a holding. The Supreme Court of Pennsylvania clearly and unambiguously rested its decision upon a state procedural rule which bars consideration of the merits of Banks' claims.

## VI. FAIR PRESENTATION OF COMPETENCY CLAIM

Ground (12) of Banks' petition in this court is that the trial court erred in requiring Banks to prove by clear and convincing evidence that he was not competent to stand trial. Banks first argues that this claim was presented to the state courts. Two of the sources cited by Banks for this assertion are his motion for a new trial and the opinion of the Supreme Court of Pennsylvania on direct appeal. In moving for a new trial, Banks recited the following as error:

> While not following the Mental Health Procedures Act in determining competency, the Court required the Defendant to meet the burden of proof under that Act (clear and convincing evidence) though apparently relying on case law decisions dealing with competency whereby the burden of proof on the Defendant should have been by a preponderance of the evidence.

Petition for a Writ of Habeas Corpus, Exhibit 1 at 2 ¶ 2(h) (quoting Motion for New Trial and/or Arrest of Judgment (filed July 1, 1983) at 3 ¶ 2(h)). Banks argues that presentation of this issue means that the issue before this court, Ground (12), "ha[s] been previously presented to and decided upon the merits by the state courts." Brief of Petitioner in Response to Rule to Show Cause at 8. In other words, the claim has been exhausted because it was fairly presented to the state courts.

The requirement of exhaustion means that a state prisoner may initiate a federal habeas corpus action only after the state courts have had an opportunity to hear the claim the petitioner seeks to vindicate in federal court. *Vasquez v. Hillery,* 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986). The exhaustion doctrine requires the defendant to present the issue to any intermediate state appellate court, if applicable, and to the state's supreme court. *Evans v. Court of Common Pleas of Delaware County,* 959 F.2d 1227, 1230 (3d Cir. 1992) (citing *Castille v. Peoples,* 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380, *reh'g denied,* 490 U.S. 1076, 109 S.Ct. 2091, 104 L.Ed.2d 654 (1989)), *cert. dismissed,* 506 U.S. 1089, 113 S.Ct. 1071, 122 L.Ed.2d 498 (1993). The issue must be "fairly presented" to the state courts, meaning that "[b]oth the legal theory and the facts underpinning the federal claim must have been presented to the state courts, ... and the same method of legal analysis must be available to the state court as will be employed in federal court ..." *Evans,* 959 F.2d at 1231 (citing *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Santana v. Fenton,* 685 F.2d 71, 74 (3d Cir.1982), *cert. denied,* 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 968 (1983); *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir.1986)).

*Carpenter v. Vaughn,* 888 F.Supp. 635, 643–644 (M.D.Pa.1994). *See also Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir.1996) (petitioner must afford each level of state courts fair opportunity to address the claim by presenting legal theory and supporting facts in such manner that claims are substantially equivalent to claims raised in federal court), *reh'g and reh'g in banc denied.* "The state courts need not discuss or base their decisions upon the presented claims for those claims to be considered exhausted." *Doctor* at 678 (citing *Picard* at 275, 92 S.Ct. 509).

◼ Contrary to Banks' recitation, the claims he presented to the state courts are not the equivalent of the claim he wishes to present to this court. The claim he presented to the state courts was that the wrong standard was applied under state law, not that the state law standard violated the federal Constitution.

In *Cooper v. Oklahoma*, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), the question was whether placing the burden of proof on the defendant to show by clear and convincing evidence that he or she is not competent to stand trial offends the Due Process Clause. The analysis by the Supreme Court of the United States is primarily an historical review of the burden of proof in cases in which mental competency is in question, along with an overview of contemporary law. The Supreme Court concluded that "[t]he near-uniform application of a standard that is more protective of the defendant's rights than Oklahoma's clear and convincing evidence rule supports our conclusion that the heightened standard offends a principle of justice that is deeply rooted in the traditions and conscience of our people." *Cooper* at 362, 116 S.Ct. 1373 (internal quotations, citation omitted). The issue recited above, i.e. whether the trial court erred in following case law applying the clear-and-convincing standard despite not following the Mental Health Procedures Act,[3] does not implicate this analysis, or any remotely similar analysis.

Banks also cites the opinion of the trial court related to his second PCRA petition. That petition is that which the Supreme Court of Pennsylvania was reviewing when it determined that the PCRA court, and the Supreme Court, did not have jurisdiction. The claim therefore cannot be said to have been fairly presented to the state courts, and an address of the merits by a court without jurisdiction is of no moment for exhaustion purposes.

We conclude that Ground (12) was not fairly presented to the state courts.

### VII. EXCUSE OF DEFAULT

 Based on the above, we conclude that Banks has procedurally defaulted the four claims not presented to the state courts. We turn, then, to the question of whether Banks may circumvent the bar erected by the default:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman* at 750, 111 S.Ct. 2546. A petitioner demonstrates a fundamental miscarriage of justice with a colorable claim of actual innocence. *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). "Actual innocence" must be distinguished from "legal innocence"; to show actual innocence, the petitioner must demonstrate that the alleged constitutional violation either precluded the development of true facts or resulted in the admission of false ones. *Id.* at 339–340, 112 S.Ct. 2514.

 The right of a criminal defendant to be tried only if competent is of such a fundamental nature that it is protected by the Due Process Clause. *Medina v. California*, 505 U.S. 437, 457, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (citing *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)). A person is not competent to stand trial if he or she lacks the capacity to understand the nature and object of the proceedings against them, to consult with counsel, and to assist in the preparation of their defense. *Id.* (citing *Drope* at 171, 95 S.Ct. 896).

A claim related to competency implicates both substantive and procedural aspects of due process. *Sena v. New Mexico*

---

3. In reciting the standard, the trial court actually recited each in the disjunctive, Opinion of Feb. 22, 1985 (denying motion for new trial) at 14, which strongly suggests that Banks' evidence failed under *both* standards. More-over, the trial court indicated that it resolved the conflicting testimony in favor of the Commonwealth, *id.* at 15, so that the preponderance of evidence standard would not have been met.

*State Prison*, 109 F.3d 652, 654 (10th Cir. 1997). The Eighth Circuit has distinguished these aspects by pointing out that the "procedural competency principle operates as a safeguard to ensure that the substantive competency principle is not violated." *Vogt v. United States*, 88 F.3d 587, 590 (8th Cir.1996) (internal quotations, brackets, citation omitted). It continued:

> Claims involving these principles raise similar but distinct issues: the issue in a substantive competency claim is whether the defendant was in fact competent to stand trial, but the issue in a procedural competency claim is whether the trial court should have conducted a competency hearing....
>
> Here, petitioner made a substantive competency claim by alleging that he was in fact tried and convicted while mentally incompetent.

*Id.* at 590–591 (citations omitted). In *Vogt*, the Eighth Circuit repeated its prior holding that procedural default does not apply to a claim that the defendant was not competent to stand trial, *id.* at 590, which appears to mean that the bar does not apply to substantive competency claims (though the holding is not so limited in *Vogt*). *But see Sena* at 654 (procedural default not applicable to substantive competency claim based on the "conflation" of cause and prejudice). *See also Nguyen v. Reynolds*, 131 F.3d 1340, 1346 and 1346 n. 2 (10th Cir.1997) (general rule of procedural default not applicable to substantive mental competency claim which was analyzed on merits, but consideration of merits of procedural competency claim barred; citing *Medina*), *cert. denied,* —— U.S. ——, 119 S.Ct. 128, 142 L.Ed.2d 103 (1998).[4]

In contrast, the Fourth Circuit has rejected the notion that procedural default is inapplicable in the context of a claim of mental incompetency:

> In *Noble v. Barnett*, 24 F.3d 582 (4th Cir.1994), this Court specifically held

that the rules governing habeas petitions had "nothing to do with the doctrine of waiver." *Id.* at 588. In so holding, this Court flatly rejected the argument that "a claim of incompetency to stand trial can never be forfeited." *Id.* at 587; *see also Clanton v. Muncy*, 845 F.2d 1238, 1240–41 (4th Cir.1988) (holding that a claim of incompetency to stand trial may be defaulted). Although *Noble* dealt with the abuse of the writ doctrine, we believe that its holding applies with equal (if not greater) force here. Put simply, the rationale of *Drope* and *Pate [v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966),] are inapposite in the context of a procedural default. *But see Bundy v. Dugger*, 816 F.2d 564, 567 (11th Cir.1987) (stating that "a defendant can challenge his competency to stand trial for the first time in his initial habeas petition"). Accordingly, we hold that a claim of incompetency to stand trial asserted for the first time in a federal habeas petition is subject to procedural default....

*Smith v. Moore*, 137 F.3d 808, 819 (4th Cir.) (bracketed material added), *cert. denied,* —— U.S. ——, 119 S.Ct. 199, 142 L.Ed.2d 163 (1998). *See also Townes v. Murray*, 68 F.3d 840, 846–847 (4th Cir. 1995) (applying cause-and-prejudice/miscarriage-of-justice standard to post-conviction competency claim), *cert denied sub nom. Townes v. Angelone*, 516 U.S. 1100, 116 S.Ct. 831, 133 L.Ed.2d 830 (1996). The court emphasized that waiver focuses on whether conduct is voluntary and knowing, while procedural default exists based on concerns of comity, federalism, and judicial economy. *Id.* at 818–819.

One very noteworthy case is *Pitsonbarger v. Gramley*, 141 F.3d 728 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 448, 142 L.Ed.2d 402 (1998), which was before the Seventh Circuit twice. In its initial opinion, *Pitsonbarger v. Gramley*, 103

---

**4.** A thorough discussion of the procedural and substantive aspects of a due process claim relating to competency is provided in *Lagway*

*v. Dallman*, 806 F.Supp. 1322, 1333–1342 (N.D.Ohio 1992).

F.3d 1293 (7th Cir.1996), *reh'g denied,* 103 F.3d 1306 (7th Cir.1997), the Seventh Circuit determined that a claim of ineffective assistance of counsel for failing to raise a claim of incompetency was barred under the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104–132, Title I, §§ 101 et seq., 110 Stat. §§ 1216 et seq. (1996). The Supreme Court vacated that order and remanded in light of *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), in which it held that AEDPA did not apply to habeas petitions pending or on appeal on the date of its enactment. *Pitsonbarger v. Gramley,* — U.S. —, 118 S.Ct. 37, 139 L.Ed.2d 6 (1997).

On remand, the Seventh Circuit reviewed not only the claim of ineffective assistance of counsel but the claim that the petitioner's use of psychotropic drugs required a hearing to determine mental competency to stand trial. *Pitsonbarger,* 141 F.3d at 736–737. Those claims had not been pursued on direct appeal in the state courts. *Id.* at 736. The Seventh Circuit found that the petitioner had not presented sufficient evidence to overcome the procedural default. *Id.* at 737. The problem was that a finding that no reasonable juror would not have found the petitioner guilty was unlikely: It was not clear that the trial court would have found the petitioner incompetent to stand trial even if a hearing had been held; even then, he could have been reevaluated after a continuance of trial and found competent. *Id.* The standard applied was the *Sawyer* "miscarriage of justice" exception to procedural default.

We turn to an examination of how all of these considerations affect Banks' petition. We first note that Banks' substantive competency claims have been preserved in his petition as Grounds (2), (4), and (5). Banks' claim relating to the burden of proof in a competency hearing is procedural in nature.

The Third Circuit has not ruled directly on the issue of whether the doctrine of procedural default bars consideration of a procedural competency claim in federal habeas corpus proceedings. However, in *Hull v. Freeman,* 991 F.2d 86 (3d Cir. 1993), the Third Circuit was faced with a claim of ineffective assistance of counsel in a state competency hearing. The court determined that the claim had been procedurally defaulted because the petitioner's appeal to the Supreme Court of Pennsylvania was untimely, and turned its attention to the question of whether the petitioner could establish cause and prejudice to excuse the default. *Id.* at 90–91. In so doing, it noted:

> Failure to hear Hull's claims would not fall within the "fundamental miscarriage of justice" exception to the procedural default rule. That exception "is concerned with actual as compared to legal innocence," *Sawyer v. Whitley,* 505 U.S. 333, 338, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992). Where, as here, Hull has no colorable claim that he did not commit the murder for which he was convicted, he cannot satisfy this exception.

*Id.* at 91 n. 3.[5] Thus, in the context of a claim of ineffective assistance of counsel

---

**5.** Unlike the Seventh Circuit in *Pitsonbarger,* the Third Circuit in *Hull* did not analyze the underlying claim relating to competency to stand trial. Hull's claim was that trial counsel did not cross examine the only adverse witness at the competency hearing, and did not present evidence on Hull's behalf. 991 F.2d at 88. However, Hull later pled guilty to murder; entry of the guilty plea would presuppose a finding by the state court that Hull was mentally competent to enter the plea. Thus, even if Hull was not competent at the time of the competency hearing, he became competent by the time of the plea proceeding (regaining competency was an eventuality contemplated by the Seventh Circuit in *Pitsonbarger*). It is not logically possible, then, that Hull was prejudiced by any purported deficiency on the part of trial counsel, which would have been cured concurrently with Hull's mental incompetency. The Third Circuit did not reach this question, but concluded that, since effective assistance of counsel would constitute grounds for waiver of the procedural bar under state law, the issue

for purposes of competency, at least, the Third Circuit has held that procedural default applies.

Also, looking to the Seventh Circuit's analysis in *Pitsonbarger*, even if Banks could demonstrate that the outcome of the competency hearing would be different under the lesser evidentiary standard,[6] he would have to demonstrate that a reasonable fact-finder would not have found him guilty or sentenced him to death once he was competent to stand trial, referring to actual (not legal) innocence. There does not seem to be any rational argument to be made that Banks was not the shooter on the day of the killings.

Taking these principles in logical order, i.e. broader to narrower, we conclude as follows:

■ (1) We agree with the Fourth Circuit that procedural default applies to claims of mental competency to stand trial, based on the differing rationales underlying waiver and procedural default.

■ (2) Even if procedural default is inapplicable to claims that a petitioner was mentally incompetent to stand trial or to be sentenced, the doctrine is applicable to procedural competency claims.

(3) Assuming that procedural default applies, a petitioner must demonstrate a basis to excuse the default under the cause-and-prejudice standard or a fundamental miscarriage of justice.

(a) Banks has not attempted to demonstrate cause for the default.

(b) Banks has not demonstrated a basis for finding a miscarriage of justice because he has not provided a basis for finding that he is actually innocent.

To all of this must be added that AEDPA bars consideration of Banks' claim. As noted by the Seventh Circuit in its initial consideration of *Pitsonbarger*, a claim not presented to the state courts is procedurally barred under AEDPA unless the petitioner can demonstrate "by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). *See also* 103 F.3d at 1293 (quoting same language and noting that AEDPA forecloses miscarriage of justice line of argument, emphasizing that underlying offense is focus of consideration). Although the Seventh Circuit's decision was vacated in *Lindh* because AEDPA was not applicable, the reasoning is valid and applicable in this case, the instant petition having been filed well after the effective date of AEDPA.

In short, we conclude that the procedural default doctrine is applicable and that Banks has not demonstrated a basis to excuse the procedural default.

### VIII. CONCLUSION

Finding no basis to excuse the procedural default of the four claims under consideration, they will be dismissed. An order consistent with this memorandum and scheduling further proceedings will issue.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The petition (record document no. 1) by petitioner George E. Banks for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is dismissed in part pursuant to Rule 4 of the Rules Governing Section § 2254 Proceedings in the U.S. District Courts, 28 U.S.C. following § 2254.

2. Grounds (7), (9), (11), and (12) of the petition are dismissed.

3. Respondents are directed to file an answer to the petition on or before May 24, 1999.

---

should be considered by the state courts in the first instance. *Id.* at 92–94.

**6.** Which is itself a questionable argument. *See* note 3 above.

4. Petitioner is directed to file, on or before June 1, 1999, a brief in support of his petition.

5. Respondents shall file their brief in opposition to the petition on or before June 21, 1999.

6. Petitioner may file a reply brief in support of his petition on or before July 5, 1999.

7. The parties are reminded that their briefs are to be in conformance with LR 5.1–5.3, 7.5–7.8, inclusive.

8. The record of the state court proceedings having been furnished to this court, the parties are relieved of any obligation to provide the same.